THE ST. BRIDGET CONVENT CORPORATION vs. THE
TOWN OF MILFORD.

Third Judicial District, New Haven, June Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

General Statutes, § 2315, as amended by chapter 184 of the Public Acts
of 1911, prescribes that "buildings" belonging to and used exclu-
sively for scientific, literary, benevolent or ecclesiastical societies,
shall be exempt from taxation, provided that such exemption shall
not include the "real estate" of any such association or corporation
as is leased or used for other than its "specific purposes." *Held*
that in view of the plain implication of the statute to exempt such
real estate of an educational and benevolent corporation as *was
used* for its specific purposes, and of our long-established public
policy and practice in harmony therewith, the word "buildings"
was to be construed as including not only the land upon which
they stood but such an amount of appurtenant or adjoining land as
might be reasonably necessary for the specific purposes of the cor-
poration, and embracing, in the present case, a piece of land used
as a campus and playground for the scholars of the school main-
tained by the plaintiff, but excluding land used for agricultural
purposes, although its products were consumed in and about the
school, and excluding, also, cottages occupied by employees who
looked after the school buildings, grounds and live stock.

A judgment which finds the issues for the plaintiff necessarily estab-
lishes the truth of all the material allegations of the complaint.

In the present case the judgment-file contained a recital to the effect
that the real estate in question—which was alleged to be owned by
the plaintiff and to have been wrongfully assessed for taxes—was
used exclusively for scientific, literary, and benevolent purposes,
but no express, specific statement that the plaintiff owned the
property. *Held* that the general finding of the issues in favor of the
plaintiff was a sufficient adjudication of its title to the property.

Argued June 12th—decided November 8th, 1913.

APPLICATION in the nature of an appeal from the
refusal of the board of relief of the town of Milford to
strike out certain items of real estate added by the
assessors to the plaintiff's tax list, taken to and tried
by the Superior Court in New Haven County, *Hol-*

*comb, J.;* facts found and judgment rendered in favor of the plaintiff, and appeal by the town of Milford. *Error in part.*

The plaintiff is a corporation without capital stock, located in the town of Milford. Its corporate purposes, as stated in the articles of association, are: "To assist each other, to minister to the spiritual wants of the community, to instruct the young and ignorant, to care for the sick and destitute, and to perform acts of charity and mercy towards all those with whom we come in contact." Its membership is limited to professed Sisters of Mercy of over two years' standing in the Meriden Community, and its property is, by its articles of association, dedicated solely to the corporate uses above stated; no member of the corporation having any claim thereon. The plaintiff maintains at Milford a boarding and day school known as the "Academy of our Lady of Mercy," for the purpose of instructing girls in such studies as are taught in our public schools, commencing with the primary grades and including those grades found in our high and college preparatory schools. There are some ninety pupils, including some who do not profess the Roman Catholic faith, and some who are instructed without charge. The teachers are mostly Sisters of Charity, who receive little, if anything, for their services, other than their board, lodging, and necessary expenses, and the school would not be self-supporting if they were paid salaries such as are usually paid in academies and other schools offering the same instruction. The premises upon which the school is located include four buildings and a considerable tract of land. The four buildings exempted by the judgment were valued for assessment at $50,200. The land was assessed at $3,000, and a part of it is found to be used as a campus and playground in connection with the school, and another part of it to raise supplies for the

table of the pupils and teachers. It is not found how much is used for the former purpose, and how much for the latter. The assessors for the town of Milford added these buildings and land to the plaintiff's tax list of 1911, and from the refusal of the board of relief to strike these items from its list, the plaintiff appealed to the Superior Court, which rendered judgment in its favor, and held that the property in question was exempt from taxation under § 2315 of the General Statutes as amended by chapter 184 of the Public Acts of 1911, on the ground, as stated in the judgment-file, that said buildings and said lands are used exclusively for scientific, literary, and benevolent purposes. The town of Milford appeals.

*William B. Stoddard* and *Robert C. Stoddard,* for the appellant in this court (the Town of Milford).

*William Kennedy* and *Spotswood D. Bowers,* for the appellee in this court (the Convent Corporation).

BEACH, J. The case turns on the sufficiency of the pleadings and findings to support the judgment, and upon the construction to be given to § 2315 of the General Statutes as amended by chapter 184 of the Public Acts of 1911 (p. 1458), the material portion of which is as follows: "The following property shall be exempt from taxation: All property belonging to the United States, or this State; buildings, with their appurtenances, belonging to any county, town, city, or borough; buildings or portions of buildings exclusively occupied as colleges, academies, churches, public schoolhouses, or infirmaries with the land appurtenant to such infirmaries; parsonages of any ecclesiastical society to the value of five thousand dollars, while used solely as such; buildings belonging to and used exclusively for scientific, liter-

ary, benevolent, or ecclesiastical societies, not including any real estate conveyed by any ecclesiastical society or public or charitable institution without reserving an annual income or rent or by a conveyance intended to be a perpetual alienation, and not including any real estate of any educational, benevolent, or ecclesiastical corporation or association . . . which is leased or used for other purposes than the specific purposes of such corporation or association, nor including lands granted and given for the maintenance of the ministry of the gospel while leased."

The judgment-file finds the issues for the plaintiff, and finds that the property in question is used exclusively for scientific, literary, and benevolent purposes, but does not find that it is owned by a "scientific, literary, or benevolent society." The tenth reason of appeal assigns as error that, by reason of this omission, the facts stated in the judgment do not support the judgment rendered.

The complaint, however, alleges that the plaintiff is a corporation organized under our laws; that it is the owner of the lands and buildings described in the complaint; that said lands and buildings are used exclusively to assist its members to minister to the spiritual wants of the community, to instruct the young and ignorant, to care for the sick and destitute, and to perform acts of charity and mercy toward all those with whom they come in contact, and to conduct a school in said Milford, known as the Academy of our Lady of Mercy, describing the school substantially in the terms contained in the foregoing statement of facts. It is also alleged that the property produces no income, and is used exclusively for the support and maintenance of the school; and it is averred that "all the property acquired by the corporation must be used solely for its benefit and for the furtherance of its purposes, and no

member is permitted to have any claim upon the corporation or its property."

The judgment, by finding the issues for the plaintiff, necessarily finds that the property in question is owned by a benevolent and educational corporation. The special finding as to the use of the property, though not so broad as the general finding of the issues for the plaintiff, is not inconsistent therewith. That being so, it is not material that the judgment fails to recite that the property is owned by a literary, scientific, benevolent, or ecclesiastical society, provided the subordinate facts found by the court are sufficient to enable us to determine, as a conclusion of law, whether or not the plaintiff falls within the statutory definition; and for that purpose we now take up the construction of the statute.

It has already been settled in the case of *Yale University* v. *New Haven*, 71 Conn. 316, 42 Atl. 87, that the portion of the statute under examination does not strictly create exemptions in the sense of exceptions to a general rule, but expresses a rule of nontaxation which has prevailed since the foundation of our government. From 1702 to 1821, all estates granted to charitable uses were exempt. By chapter 29 of the Public Acts of 1822 (p. 35) the exemption was restricted to "buildings occupied as colleges, academies, schoolhouses, churches or infirmaries." In 1854 the exemption was further restricted to "such portions of buildings as are exclusively occupied as colleges, academies, schoolhouses, churches or public infirmaries," but with the qualification that "all buildings belonging to scientific, literary, benevolent or ecclesiastical societies, used exclusively for scientific, literary, benevolent or religious purposes," should also be exempt. Comp. 1854, p. 838, § 6.

In 1859 real estate of ecclesiastical, public or charitable institutions, conveyed in perpetuity and without

reserving an annual income or rent, was declared not to be exempt, and this provision was embodied in the Revision of 1866; and the language under consideration then read as follows: "The following property shall be exempt from taxation: . . . Such portions of buildings, as are exclusively occupied as colleges, academies, schoolhouses, churches or public infirmaries; all buildings belonging to scientific, literary, benevolent or ecclesiastical societies, used exclusively for scientific, literary, benevolent or religious purposes; but whenever any ecclesiastical society, or any public, or charitable institution, shall have leased, or otherwise conveyed, any real estate, from which said society or institution does not receive an annual income, or rent, or where such conveyance is intended to be a perpetual conveyance, such estate shall not be exempt from taxation." Rev. 1866, p. 707, § 6.    This language was carried over into the Revision of 1875, except that the word "schoolhouses" was shifted into its present position, following the word "public," so that the exemption of schoolhouses applied thereafter only to public schoolhouses. Rev. 1875, p. 154, § 12.

In 1879 the following Act was passed, being chapter 24 of the Public Acts of 1879: "The real estate of every educational, benevolent, and ecclesiastical corporation and association, whether held in the name of such corporation or association, or by any person or persons in trust for such corporation or association, and which is leased or used for other purposes than the specific purposes of such corporation, shall be set in the assessment list for taxation, in the same manner as if the same was held by an individual taxpayer, and shall be liable to taxation to the same extent and in the same manner as real estate of individual taxpayers."

These successive limitations of the Act of 1822 were evidently imposed, from time to time, to correct abuses

and evasions which had grown up under and were supposed to be permitted by the law as it then stood. Consequently they throw a strong light on the contemporaneous legislative construction of the Act. The Act of 1879, for example, making taxable the real estate of every educational, benevolent, and ecclesiastical corporation which was leased for purposes other than the specific purposes of such corporation, raises a plain implication that such real estate was not then supposed or intended to be taxable unless so leased. The substance of this Act of 1879 was carried over into the Revision of 1888, with the additional limitation that the exemption was not to include any real estate of any educational, benevolent, or ecclesiastical corporation or association which is leased "or used" for other purposes than the specific purposes of such corporation or association. Section 2315 of the General Statutes of 1902 is in the same words. The Act of 1911, which was in force when the plaintiff's tax list was amended by the assessors, is the same, so far as the special provisions under discussion are concerned, as § 2315 of the General Statutes of 1902, except that the words "with the land appurtenant to such infirmaries" were added after the words "public schoolhouses or infirmaries."

It thus appears that for over thirty years the statutory exemption of buildings owned and used by scientific, literary, benevolent, or ecclesiastical societies has been coupled with a proviso that the exemption should not extend to real estate of any educational, benevolent, or ecclesiastical corporation leased or (since 1888) used for other purposes. We think the exemption and proviso must be read together in order to determine the legislative intent, and that, when so read in the light of our long-established public policy, the intent to exempt some real estate of educational corporations which are also benevolent is manifest. Then the question is:

How much of the real estate in question falls within the exemption? The defendant town claims that buildings only are exempted by the statute, but the long-continued use of the phrase "real estate" in the proviso is of some significance. Moreover, the question is not a new one. In *Manresa Institute* v. *Norwalk*, 61 Conn. 228, 231, 23 Atl. 1088, after holding that the plaintiff was not an ecclesiastical society for reasons stated, we said: "But however this may be, the language of the statute applies only to buildings, and excludes land from the exemption, except such as usually goes with buildings." And in *Yale University* v. *New Haven*, 71 Conn. 316, 334, 42 Atl. 87, in determining what property was included under the phrase "buildings or portions of buildings, exclusively occupied as colleges," we held, reasoning from the conclusion that the phrase last quoted was not strictly so much an exemption from taxation as the declaration of a long-established public policy, and was therefore to be construed reasonably so as to give full effect to the policy declared, that the exemption included not only the buildings, but "the adjoining land found to be reasonably necessary for the purposes of the observatory, and No. 121 Elm Street, used as a college yard in connection with the college buildings."

The General Assembly of 1911 added to the Act the words "with the land appurtenant to such infirmaries"; but these words, whatever their effect might have been, if the construction of the statute were otherwise doubtful, could not have the effect of changing the settled construction of the statute, and rendering liable to taxation lands appurtenant to colleges, academies, and public schoolhouses, which were then exempt.

It being settled that the word "buildings" in this Act includes appurtenant land to a reasonable amount,

the proviso already quoted fixes a limit, in one direction, beyond which the exemption cannot be extended, by excluding from the exemption real estate of educational, benevolent, or ecclesiastical corporations leased or used for other purposes than the specific purposes of such corporation.

In the present case some of the tract on which the school buildings are located is found to be used as a campus and playground, and this land, together with that which is reasonably proper as a site for the school buildings themselves, is fairly exempt under the rule in *Yale University* v. *New Haven,* 71 Conn. 316, 42 Atl. 87.

But other portions of the land are specifically found to be cultivated as a vegetable garden, and the produce consumed by the teachers and pupils. The land so used is not used for the specific purposes of the plaintiff corporation. We think the phrase "specific purposes," in this connection, means the corporate purposes specified in the charter, upon which the right of exemption is predicated. It follows that so much of this land as is used for agricultural purposes, although the produce is consumed in and about the school, is not exempt.

A similar difficulty arises in connection with the so-called Victor Cottage and the old Town Road Cottage, which are specifically found to be occupied by employees who care for the school buildings, grounds, cows, and gardens. These buildings do not appear to be used exclusively for the specific purposes of the plaintiff.

There is error, the judgment is set aside, and the cause remanded to the Superior Court with direction to render a judgment excluding from the plaintiff's tax list of 1911 the Merwin Cottage and the Laurelton Hall building, and the appurtenant lands used exclusively

as a campus and playground and reasonably necessary as a site for the said buildings; and including in said list the balance of the plaintiff's real estate in the town of Milford.

No costs will be taxed in this court.

In this opinion the other judges concurred.