THE EDGEWOOD SCHOOL, INC. *v.* TOWN OF GREENWICH.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued June 6—decided July 13, 1944.

*H. Allen Barton,* for the appellant (defendant).

*Philo C. Calhoun,* for the appellee (plaintiff).

JENNINGS, J. The principal question to be determined is whether the plaintiff school is exempt from taxation under our statutes. The finding is subject to correction in only one respect material on this appeal. The issues were greatly narrowed by the sustaining of a demurrer to all the special defenses but one. Only two questions remain for decision, the one stated above and the scope of an appeal from a board of tax review.

The plaintiff is a corporation without capital stock, organized in 1921 and since that date located in Greenwich. Its stated purpose was to establish and maintain a private school. It is coeducational and most of its pupils come from Greenwich and vicinity. There are one hundred and fifty students, sixty of whom are boarders, and they range from preschool age to those preparing for college. The plaintiff specializes in the education of pupils who, for various reasons, have difficulty in adjusting themselves to the public school, and it has obtained excellent results.

Pupils are frequently referred to the school for this reason by public and private school teachers and officials of social agencies. The spirit of the school is highly democratic and free from social or financial distinctions or discrimination. The pupils to a great extent take care of the maintenance of the property, keep the rooms in order, wait on table, care for vegetable gardens, cut firewood and perform similar self-sustaining functions. The school is operated, in so far as its accommodations permit, as a public school, and no worthy applicant has ever been rejected for inability to pay the established rates or for other financial or social reasons.

The teachers are paid moderate salaries. The tuition ranges from $150 in the lower grades to $450 in the upper, and the established rate for boarders is $1400. All of these rates are maximum and are adjusted downwards where necessary. Free scholarships are given to about thirty day pupils, and the average annual additional deductions granted other pupils have amounted to approximately $12,000. The school has on occasion loaned its facilities to the town of Greenwich for scientific study and has made its manual training departments available to inhabitants of the town. The average annual rebate in tuition to pupils from Greenwich has been $5000. No member, officer or employee of the corporation has ever received or, by an amendment of its certificate of incorporation made in June, 1941, will in the future receive any pecuniary profits from the operation of the corporation except reasonable compensation for services.

The school has always operated at a loss, the deficits usually being made up by gifts from individuals. The average annual deficit over the last ten years has been $21,600. In 1941, its gross income was $88,-

105.21 and its gross expenditures, $113,241.37, leaving a deficit of $25,136.16. The book value of its property on June 1, 1942, was $221,774.10, of which $184,040 was real estate. The real estate was assessed for $160,830, and no assessment of personal property was made.

Prior to the last day for the filing of assessment returns (July 1, 1942) with the assessors, a claim for exemption on a form prepared by the state tax commissioner was filed with them. The claim was denied and the plaintiff appealed to the board of tax review, filing a claim for exemption with it on a form prepared by it for the purpose. On October 2, 1942, the treasurer of the plaintiff appeared before the board, orally made claim for exemption and offered to be sworn and to answer all questions touching the school property. No inquiry of him was made and the appeal was denied.

The pertinent statute is General Statutes, § 1163 (7), adopted in 1927, set forth in the footnote.[1] The history of this statute has been reviewed, and it has been applied, in many recent cases. *Canterbury School, Inc.* v. *New Milford,* 111 Conn. 203, 149 Atl. 685; *Stamford Jewish Center, Inc.* v *Stamford,* 117

---

[1] Sec. 1163. EXEMPTIONS. The following-described property shall be exempt from taxation: . . . (7) subject to the provisions of sections 1164 and 1165, the real property of, or held in trust for, a Connecticut corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of, or held in trust for, any such corporation, provided (a) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as proper beneficiary of its strictly charitable purposes, and provided (b) in 1933, and quadrennially thereafter, a statement on forms prepared by the tax commissioner shall be filed on or before the last day required by law for the filing of assessment returns with the local board of assessors of any town, consolidated town and city, or consolidated town and borough, in which any of its property claimed to be exempt is situated.

Conn. 379, 168 Atl. 5; *Masonic Building Assn.* v. *Stamford*, 119 Conn. 53, 174 Atl. 301; *Connecticut Junior Republic Assn., Inc.* v. *Litchfield*, 119 Conn. 106, 174 Atl. 304; *Charter Oak Council, Inc.* v. *New Hartford*, 121 Conn. 466, 185 Atl. 575. In the first and last, exemption was denied on the ground that profits might accrue to officers, members or employees; the Masonic Building Association was held not to fulfill the condition of being a charitable or educational institution within the statute. The Stamford Jewish Center was not primarily an educational institution. The Connecticut Junior Republic was held to fulfill all conditions. Like the Republic, the plaintiff is organized to care for educationally exceptional and underprivileged children; nearly 20 per cent of its expenses are met by charitable gifts. By caring for this type of child, it not only relieves the public school system of a number of pupils but, even though that number be comparatively small, it serves the interests of the general public. Such children are a great burden and responsibility on the teachers and a disturbing element in the school.

Such difference as exists between the Republic and the plaintiff undoubtedly lies in the more charitable aspect of the former, which is concerned primarily with the underprivileged rather than incidentally as is the case with the plaintiff. This distinction, under the facts found, is not such as to deprive the plaintiff of the benefit of the statute. Its property is sequestered for educational uses and neither it nor any person can secure any profit from its operations. This brings it squarely within the four corners of the statute. The only two requirements stated therein are fulfilled. The holdings and dicta referred to by the defendant in cases decided both before and after the 1927 amendment do not require a contrary conclusion. The trial

court correctly concluded that the plaintiff's property was exempt. Note, 108 A. L. R. 284.

The defendant denies that the Court of Common Pleas had jurisdiction to decide the case on its merits. It claims that the court's inquiry is limited to determining whether the board acted illegally, arbitrarily or in abuse of its discretion. *Howe* v. *Civil Service Commission,* 128 Conn. 35, 39, 20 Atl. (2d) 397. No facts were found by the board. It therefore devolved upon the trial court on appeal to find them. *Beaverdale Memorial Park, Inc.* v. *Danaher,* 127 Conn. 175, 182, 15 Atl. (2d) 17. The question presented was one of law, to wit, was the plaintiff, on the facts found, exempt under the statute, properly construed. See *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 12, 37 Atl. (2d) 689. Furthermore, a party aggrieved by the action of the board of tax review is not merely given the bare right of appeal. The powers given to the appellate court are defined and are broad. General Statutes, Cumulative Supplement, 1935, § 374c, provides, in part: "The court shall have power to grant such relief as shall to justice and equity appertain, upon such terms and in such manner and form as shall appear equitable." The court had jurisdiction to dispose of the case in accordance with the method adopted.

There is no error.

In this opinion MALTBIE, C. J., and DICKENSON, J., concur.

BROWN, J. (dissenting). I am unable to agree with the majority's conclusion that the plaintiff's property is exempt from taxation under § 1163 (7) of the General Statutes. I am satisfied that by virtue of the provisions of this section no exemption should be granted

unless the situation presented is "in accord with the conception of public education and public benefit which is at the root of the exception claimed—the performance, though by private persons, of functions which otherwise would devolve upon the State or municipal government." *Pomfret School* v. *Pomfret*, 105 Conn. 456, 460, 136 Atl. 88. To my mind that this is the basis upon which exemption rests is implicit in the statute. Furthermore, presumably the statute was adopted "in the light of . . . the judicial construction and application of prior statutes." Id., 462. Recognizing this principle, this court in *Stamford Jewish Center, Inc.* v. *Stamford*, 117 Conn. 379, 168 Atl. 5, in considering this very statute in its present amended form, after referring to earlier decisions of similar import, at page 385 said: "We discover in the statute now under consideration, General Statutes, § 1163, though differing in phraseology from previous enactments, a consistent adherence to the underlying theory upon which tax exemptions have always been based, viz.: a purpose to serve the interests of the general public and a sequestration of the property of the corporation to the use of the public, and we deem the considerations involved in the opinions referred to, have full bearing in the present case." I am convinced that this states the correct principle of interpretation to be utilized in determining the present appeal.

In applying it, the crucial finding in this record is that "The school is operated insofar as its accommodations permit, as a public school." The other facts found show that the primary and major function of the plaintiff is to provide private school education, which is of interest only to those "who have the means and disposition to separate their children from the public schools." *Brunswick School* v. *Greenwich*, 88 Conn. 241, 243, 90 Atl. 801. They further show that,

in the absence of sufficient cultivation and stimulation of this interest, the subsidiary and minor function upon which the plaintiff relies for exemption could not exist. Since the vital determination of the extent to which, if at all, the plaintiff shall function as a public school is left solely to its own discretion under the circumstances stated, I conclude that it has failed in this action to meet the test of showing that its property "is sequestered from private, and devoted to public, use" in the sense which this court has repeatedly held to be the essential prerequisite to exemption under the statute. *Connecticut Junior Republic Assn., Inc.* v. *Litchfield*, 119 Conn. 106, 108, 174 Atl. 304, and cases cited.

In my opinion there is error.

In this opinion ELLS, J., concurred.