[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE:
CT Page 7692 MOTION FOR SUMMARY JUDGMENT (#122)
Ricky Miller and his wife, Jolene Miller, the plaintiffs, filed a two count complaint on December 3, 1996, against Sterling Extruder Corporation. Count one is a product liability action, alleging that a machine created by Sterling was defective and that this defect caused severe injuries to Ricky Miller.[1] Count two is Jolene Miller's loss of consortium claim. Ricky Miller's employer, B D Molded Products, Inc., filed an intervening complaint, alleging that it paid workers' compensation to Ricky Miller and that the defendant is responsible for these sums. The defendant filed an answer and special defenses to both the Millers' complaint and the employer's intervening complaint on June 14, 1999.
The defendant moves for summary judgment on the ground that the lawsuit was brought later than ten years from the date that the defendant last parted with possession or control of the machine and that it is entitled to judgment as a matter of law. The Millers and the intervening employer object on the ground that the question of when the defendant last parted with possession and control of the machine is a genuine issue of material fact.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Riverav. Double A Transportation, Inc., 248 Conn. 21, 24, 727 A.2d 204 (1999). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573,578, 573 A.2d 699 (1990). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Sherwood v. DanburyHospital, 252 Conn. 193, 201, 746 A.2d 730 (2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) Rivera v. Double ATransportation, Inc., supra, 248 Conn. 24. "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital, supra,252 Conn. 201. "In ruling on a motion for summary judgment, the court's CT Page 7693 function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988).
The defendant argues that General Statutes § 52-577a[2] bars this action because the action was brought more than ten years after the defendant parted with possession or control of the machine. The Millers and the intervening employer object, arguing that when the defendant last parted with possession and control of the machine is unclear. They also argue that the defendant had a continuing duty to warn to warn of the dangerous nature of the machine and that the defendant's failure to warn tolled the statute of repose.
"It is essential to follow the precise direction of [§] 52-577a
(a). It unequivocally states that no action can be brought later than ten years `from the date that the party last parted with possession or control of the product.'" (Emphasis in original.) Kelemen v. RimrockCorp., 207 Conn. 599, 606, 542 A.2d 720 (1988). "Prior to the revision of the statute of repose in 1979, the defendant had to prove only that the sale had occurred more than eight years before the action had been commenced by the injured party. See General Statutes (Rev. to 1979)52-577a. The legislature, in 1979, changed the date when the repose period commenced from the date of sale to the date that the party last parted with Possession or control of the product. It did not use the date that the buyer gained possession or control of the product and we must presume that it meant to make such a distinction. `Where the legislative intent is clear there is no room for statutory construction.' HartfordHospital v. Hartford, 160 Conn. 370, 376, 279 A.2d 561 (1971); see alsoJohnson v. Manson, [196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S.Ct. 1290, 89 L.Ed.2d 787, reh. denied,475 U.S. 1061, 106 S.Ct. 1290, 89 L.Ed.2d 597 (1986)]; Houston v.Warden, 169 Conn. 247, 252-53, 363 A.2d 121 (1975). `We have recognized that "courts do not torture words to import ambiguity where the ordinary meaning leaves no room for it . . . ." Heffernan v. Slapin, 182 Conn. 40,46, 438 A.2d 1 (1980).' Mingachos v. CBS, Inc., 196 Conn. 91, 98,491 A.2d 368 (1985)." Id. "[T]he operative statutory focus is when theseller `last parted with possession or control of the product.' The intent of the statute is to hold sellers of products liable for a certain time period after those products have left their possession or control and entered the marketplace. Presumably, a seller would have a chance to discover defects and take appropriate action to remedy them while the product remains in its possession. Considering the intent of the statute, whether the product is in the hands of the [delivering] carrier or the buyer is irrelevant for purposes of computing the running of the statute of repose. The unambiguous language of the statute makes the legislature's intent obvious. `Where the words of a statute are clear, CT Page 7694 the task of a reviewing court is merely to apply the directive of the legislature . . . .' Verrastro v. Sivertsen, 188 Conn. 213, 220,448 A.2d 1344 (1982)." (Emphasis added.) Id., 607.
The defendant submits evidence regarding possible dates that it last had possession and control of the machine. According to the defendant's Exhibit C, an affidavit by Mark Panaro,[3] if the defendant's field service representatives were involved in the installation or start-up of the machine, the installation would have been concluded before January 29, 1986. (Defendant's Exhibit C, Affidavit of Mark Panaro, ¶ 13) Panaro found no evidence, however, that the defendant's field service representatives were involved in the installation and start-up of the machine. (Defendant's Exhibit C, Affidavit of Mark Panaro, ¶ 13). The machine was delivered to the intervening employer between late October 1985 and early December 1985. (Defendant's Exhibit C, Affidavit of Mark Panaro, ¶ 12). According to one exhibit, the delivery date was October 31, 1985. (Defendant's Exhibit E, Item Description). According to another exhibit, the ship date was between October 31, 1985, and November 15, 1985. (Defendant's Exhibit F, Purchase Order). According to yet another exhibit, the defendant scheduled delivery for November 15, 1985. (Defendant's Exhibit G, Letter to Intervening Employer, dated September 10, 1985). The intervening employer also admits that it purchased the machine on approximately November 1985. (Defendant's Exhibit N, Interrogatories to Intervening Employer). Furthermore, Panaro states that he "conducted a search at Davis Standard for any records that in anyway relate to the blow mold machine identified in paragraph 5. Exhibits `D,' `E,' `F,' `G,' `H,' `I,' and `J' are the only documents in the possession of Sterling Extruder Corporation, now Davis Standard, that in any way refer to, mention, identify or discuss the sale, installation or service of the blow mold machine, with the exception of letters from the attorney for Sterling Extruder Corporation to employees of Sterling Extruder Corporation (now Davis Standard) and letters from Davis Standard to its attorney, all of which are dated after the date this lawsuit was filed and were written in connection with this lawsuit." (Defendant's Exhibit C, Affidavit of Mark Panaro, ¶ 18).
The Millers argue that the date of delivery is unclear and submit evidence to this effect. They submit a letter dated January 3, 1986, by the intervening employer to the defendant, which states that the intervening employer was unable to accept delivery of the machine due to delays in construction of its facilities. (Millers' Exhibit, letter dated January 3, 1986). Furthermore, "[s]ince the machine was completed, Sterling was granted permission to make a sample run for a prospective customer of Sterlings [sic] on our machine during this delay." (Millers' Exhibit, letter dated January 3, 1986). CT Page 7695
The intervening employer argues that "[t]he Defendant has not provided enough sound, admissible evidence to prove that the machine was no longer in its possession and control after December of 1985 or January of 1986. In fact, the documentation provided by the defendant puts forth letters, notes of telephone calls, and other written information between the Defendant and the Intervening Plaintiff, with no verification contained therein as to what the actual result was of the contact between the parties
There is evidence that makes the date of delivery unclear. According to the Millers' evidence, the intervening employer arguably did not have possession and control of the machine as of January 3, 1986. (Millers' Exhibit, letter dated January 3, 1986). According to the defendant's evidence, delivery was scheduled for November 15, 1985. (Defendant's Exhibit G, Letter to Intervening Employer, dated September 10, 1985). Although the Millers do not provide evidence of when the actual delivery date was, their evidence is at least sufficient to refute the defendant's evidence that delivery occurred in October or November 1985. The plaintiffs' evidence places possession and control in the defendant as late as January 3, 1986, and, conceivably, the machine could have remained at the defendant's plant beyond December 1986. Thus, when the defendant relinquished possession and control of the machine is a geniune issue of material fact.[4] The court therefore denies the defendant's motion for summary judgment. As the court has decided this matter on this basis, the court need not address the Millers' and the intervening employer's alternate arguments.
The Court
By _____________________________ Nadeau, J.